## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| PEOPLE OF GUAM,<br><br>vs.<br><br>**PAUL JOHN TUNCAP CRUZ,**<br><br>Defendant. | CRIMINAL CASE NO. **CF0708-23-01**<br><br>**DECISION AND ORDER** |

### INTRODUCTION

This matter came before the Honorable Vernon P. Perez on March 25, 2025, for hearing on the People of Guam's ("the Government") Motions for Relief (1) To Allow the Testimony of Former Medical Examiner Dr. Jeffrey Nine, M.D. via Audio-Video Telecommunication; or alternatively, (2) to Continue Trial to Secure the Testimony of Former Medical Examiner Dr. Jeffrey Nine, M.D., by Deposition ("Motion for Relief"). Present were Assistant Attorney General Cristopher Grey and Special Assistant Attorney General Curtis C. Van de veld on behalf of the Government and Defendant with counsel, Thomas J. Fisher. Having reviewed the pleadings, the arguments presented, and the record, the Court now issues the following Decision and Order.

### BACKGROUND

Defendant is charged with one count of Child Abuse (As a Third Degree Felony) and one count of Failure to Provide (As a Misdemeanor). (Indictment, Nov. 9, 2023). These charges stem from the death of Defendant's minor child P.J.C. (DOB: 08/13/2022) in November 2023. *Id.* The

charges against the minor child's mother, Giltinan Aldan Ramangmou,[1] were severed from Defendant Cruz for trial. *See* Order After Hearing Granting Defendant Cruz's Motion to Sever, Dec. 27, 2023. The charges against Defendant Ramangmou went to trial in July 2024. A jury of twelve ultimately found Defendant Ramangmou guilty of Negligent Homicide (As a Third Degree Felony) and Child Abuse (As a Third Degree Felony).

Jury Selection and Trial for Defendant Cruz was most recently set to commence on April 3, 2025. *See* Second Amended Criminal Trial Scheduling Order, Feb. 13, 2025. Defendant asserted his right to a speedy trial on February 11, 2025.

On March 21, 2025, at the Pre-Trial Conference, the Government indicated it would be filing a motion regarding the testimony of Guam's former Medical Examiner, Dr. Jeffrey Nine. The Government subsequently filed the instant Motion a few hours later, along with a Submission of Declaration of Dr. Jeffrey Nine in support of the People's Motion for Relief. The Court set an evidentiary hearing for March 25, 2025.

On March 24, 2025, Defendant filed his Opposition.

On March 25, 2025, the Court heard sworn testimony from Dr. Jeffrey Nine via Zoom. The Court subsequently placed the matter under advisement.

On March 31, 2025, the Court ordered the Government to have Dr. Jeffrey Nine submit a statement from a medical professional regarding his wife's medical condition. On April 2, 2025, the Government submitted under seal for in camera review a medical professional statement regarding Dr. Jeffrey Nine.

## DISCUSSION

The Government moves the Court to allow Dr. Nine's testimony at trial via audio-video telecommunication or alternatively, to continue trial for no less than six (6) months to secure his testimony by deposition. *See generally*, Mot. Relief, Mar. 21, 2025. Dr. Nine conducted the autopsy of the victim in the instant matter, P.J.C. (DOB: 08/13/2022), and his testimony is

---

[1] Defendant Ramangmou was charged with (1) Murder (As a First Degree Felony); (2) Aggravated Assault (As a Second Degree Felony); and (3) Child Abuse (As a Third Degree Felony). (Indictment, Nov. 9, 2023).

*People v. Cruz*
Case No. CF0708-23-01
Decision and Order

essential for the Government's case. *Id.* at 2. Dr. Nine relocated to Ohio with his wife and son in the summer of 2024 and is unable to travel to Guam "due to his need to assist his wife and child with multiple weekly treatments for their serious health issues." *Id.* Defendant opposes, arguing that remote testimony will violate his rights under the Confrontation Clause pursuant to *Crawford v. Washington,* 541 U.S. 36 (2004). *See generally,* Opp'n, Mar. 24, 2025.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "[T]he Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." *Coy v. Iowa,* 487 U.S. 1012, 1016 (1988) (citation omitted). This right serves to "ensure the integrity of the fact-finding process." *Id.* at 1019 (citation omitted). Defendants, however, do not have an absolute right to a face-to-face meeting with witnesses against them at trial. *Maryland v. Craig,* 497 U.S. 836, 844 (1990). This "does not, of course, mean that it may easily be dispensed with." *Id.* at 850. The Supreme Court in *Craig* confirmed that "a defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Id.* (citations omitted).

While *Craig* considered the use of one-way closed-circuit television, courts have since applied its reasoning with equal force to live, remote, two-way video technology.[2] *See, e.g., United States v. Carter,* 907 F.3d 1199 (9th Cir. 2018) ("We now make clear that a defendant's right to physically confront an adverse witness (whether child or adult) cannot be compromised

---

[2] To the extent Defendant argues that *Craig* is no longer valid in light of *Crawford v. Washington,* 541 U.S. 36 (2004), the Court is not inclined to agree. *See, e.g.., State v. Tate,* 969 N.W.2d 378, 385 (Minn. 2022) ("We are not persuaded otherwise by Tate's assertion that *Craig* is undermined – and should not extend beyond its facts –on the ground that it conflicts with the Supreme Court's subsequent decision in *Crawford . . . Crawford* did not overrule *Craig.* The majority opinion in *Crawford* did not even cite to the *Craig* decision. Furthermore, *Crawford* and *Craig* answered different questions: *Crawford* addressed the constitutionality of admitting an out-of-court statement, while *Craig* considered whether a defendant's Confrontation Clause right has been satisfied when a court allows testimony via remote technology in place of face-to-face testimony for an unavailable witness."); *Shalala v. Ill. Council on Long Term Care, Inc.,* 529 U.S. 1, 18 (2000) ("This Court does not normally overturn . . . earlier authority sub silentio.").

by permitting the witness to testify by video (whether one-way or two-way) unless *Craig's* standard is satisfied. And that standard is a stringent one; the use of remote video procedure must be reserved for rare cases in which it is 'necessary.'"); *United States v. Yates,* 438 F.3d 1307, 1313 (11th Cir. 2006) ("Our circuit precedent acknowledges that *Craig* supplies the proper test for admissibility of two-way video conference testimony."); *United States v. Bordeaux,* 400 F.3d 548, 554 (8th Cir. 2005) ("*Craig* would govern this case even if there were not a precedent squarely on point because a 'confrontation' via a two-way closed circuit television is not constitutionally equivalent to a face-to-face confrontation. . . . two-way systems share with one-way systems a trait that by itself justifies the application of *Craig:* the 'confrontations' they create are virtual, and not real in the sense that a face-to-face confrontation is real."). Accordingly,

> [W]here a defendant's right to confront a witness against him will be affected, the determination of whether a particular case requires departure from usual procedures must be made, by the trial court, on a case-by-case basis. The court generally must (1) hold an evidentiary hearing and (2) find: (a) that the denial of physical face-to-face confrontation at trial is necessary to further an important public policy and (b) that the reliability of the testimony is otherwise assured.

*United States v. Yates,* 438 F.3d 1307, 1305 (11th Cir. 2006) (citing *Craig,* 497 U.S. at 850, 855).

## A. Necessity to further an important public policy

The Court first considers whether the denial of a face-to-face physical confrontation is necessary to further an important public policy. *See Craig,* 497 U.S. at 850. "*Craig* requires that furtherance of the important public policy make it *necessary* to deny the defendant his right to a physical face-to-face confrontation." *Yates,* 438 F.3d at 1316 (emphasis in original). "[A] criminal defendant's constitutional rights cannot be neglected merely to avoid added expense or inconvenience." *Carter,* 907 F.3d at 1208. *See also Yates,* 438 F.3d at 1316 (requiring court to make "case-specific findings of fact that would support a conclusion that [a] case is different from any other criminal prosecution in which the Government would find it convenient to present testimony by two-way video conference.").

On March 25, 2025, the Court held an evidentiary hearing and heard sworn testimony from Dr. Nine regarding his family's health situation and the impact traveling to Guam would

have. The Court considers these facts in addition to those set forth in his Declaration filed March 21, 2025. The Court also considers the statement received from Mrs. Nine's physician submitted by the Government on April 2, 2025.

Dr. Nine testified that while on Guam, he and his wife decided to foster a child with disabilities and formally adopted him in 2024. Their son requires twenty-four (24) hours of care for his disability. In 2024, Dr. Nine's wife developed a new condition which without treatment, would result in permanent blindness and stroke. Dr. Nine's wife treatment requires weekly injections and she cannot drive. In May 2024, Dr. Nine and his family moved to Ohio because they required medical care not available on Guam. Dr. Nine testified that his wife and son's conditions are significant and lifelong. Traveling to Guam from Ohio requires forty-eight to sixty hours of travel, as Guam and Ohio are over 7,500 miles apart. Dr. Nine testified that his absence for an extended period of time (i.e. more than twenty-four (24) hours) would result in severe consequences for his family, especially for his wife. Dr. Nine testified that when he had to travel to Guam from Ohio while he was still under contract to conduct autopsies, he would travel on the weekends to try to avoid interrupting his son's appointments during the week. Dr. Nine testified that his wife suffered greatly during these trips as she was unable to get the required amount of sleep every night (8 to 10 hours) for her medical condition while he was away and it took his wife a long time to recover from his travel away. Dr. Nine further testified that he does not have any family in the vicinity of where they live to assist, nor is he able to utilize visiting nurses to assist due to his son's need for twenty-four-hour care.

Courts have found illness a sufficient justification to satisfy the necessity prong of *Craig*. "The state has a legitimate interest in protecting the witness from physical danger and suffering." *Horn v. Quarterman*, 508 F.3d 306, 320 (5th Cir. 2007). "[I]t is possible to view *Craig* as allowing a necessity-based exception for face-to-face, in-courtroom confrontation where the witness's inability to testify invokes the state's interest in protecting the witness . . . from physical danger or suffering." *Id.* In *State v. Sweidan*, a Washington Court further concluded "that the important policy of alleviating physical pain and suffering can extend to the circumstances when the witness would attend to another's needs resulting from such suffering.

No reason exists to distinguish between the aching of the witness and the hurting of a witness's close family member." *State v. Sweidan,* 461 P.3d 378, 389 (Wash. App. 2020). *See also, People v. Coulthard,* 307 Cal. Rprtr.3d 383, 411 (Cal.App. 2023) (finding the People met their burden to show the witness's remote testimony was necessary to advance an important public policy (ensuring the health of courtroom users during the COVID-19 pandemic) where the witness was the primary caretaker of her two young children, did not have the means to arrange for alternate childcare, her testimony could not be supplanted by another, and where the defendant asserted his right to a speedy trial).

Accommodating Dr. Nine's requirement to remain in the state of Ohio to take care of his wife and son's health conditions is more than a matter of convenience. Because his presence is needed in Ohio as a caretaker, he cannot travel the significant distance to Guam to testify in person without endangering their health. Mrs. Nine's physician confirmed that it will be detrimental to her health if Dr. Nine were to be gone for more than twenty-four hours. *See* Medical Professional Statement Regarding Dr. Jeffrey Nine, Apr. 2, 2025. There are no reasonable alternatives which would allow this matter to proceed in a timely fashion. Defendant has asserted his right to a speedy trial and Dr. Nine testified that the health conditions his wife and son face are lifelong. Thus, as their health challenges are not likely to improve soon, there does not appear to be any option to continue trial to a later time for Dr. Nine to travel the long distance to Guam and testify in person.

In light of the above, the Court finds that Dr. Nine's remote video testimony is necessary to further the important public policy of health care – caring for ailing family members and preventing further harm to his wife's already serious medical condition. Dr. Nine's testimony regarding the state of the victim child upon his arrival at the scene and his subsequent autopsy of the body cannot be provided by anyone else. *See Bullcoming v. New Mexico,* 564 U.S. 647, 658-59 (2011) ("*Melendez-Diaz,* relying on *Crawford's* rationale, refused to create a 'forensic evidence' exception to this rule. An analyst's certification prepared in connection with a criminal investigation or prosecution, the Court held, is 'testimonial,' and therefore within the compass of the Confrontation Clause.").

**B. Reliability of Testimony**

The Court turns next to the reliability prong of the *Craig* analysis. The Government has the burden to show that testimony obtained through a live, two-way audio-video telecommunication is reliable. *See Craig*, 497 U.S. at 850. "To satisfy this prong, the witness must generally be under oath and understand the seriousness of his or her testimony, the witness must be subject to cross-examination, and the judge, jury, and defendant must be able to properly see and hear the testifying witness." *Id.* at 845-46.

The Court understands that the intended format for Dr. Nine to testify remotely via audio-video telecommunication is Zoom, the medium from which he testified remotely on March 25, 2025. At that hearing, the Court, the Government, Defense Counsel, and Defendant were able to see and hear Dr. Nine without technical difficulty as he answered questions from both the Government and defense. Dr. Nine's camera was clear and his video feed was fully displayed on the courtroom television screen. Dr. Nine's camera presented his upper body and face, similar to what a jury would see from a witness sitting at the witness stand. At trial, Dr. Nine's video picture will be fully displayed on the Court's 65-inch television in the courtroom for the jury. Dr. Nine has testified over 250 times as a medical examiner and therefore understands the seriousness of his testimony. Additionally, Dr. Nine sets forth the following in his Declaration:

> 8. I will secure such equipment and arrange for such technical assistance as may be required to testify by means of audio-video communication.
>
> 9. I understand that if I am allowed to testify either by deposition or by means of audio-visual telecommunication, that I will be sworn to tell the truth, the whole truth, and nothing but the truth under the laws of Guam and am willing to take such oath as the Court may require.

(Decl. of Dr. Jeffrey Nine ¶¶ 8-9, Mar. 21, 2025). Any Zoom testimony will also be subject to contemporaneous cross-examination. A jury will be able to clearly see and observe Dr. Nine as he testifies, judge his demeanor and the manner in which he testifies, and ultimately determine whether his testimony is worthy of belief. Accordingly, the Court finds that the Government has shown that testimony obtained through a live, two-way video telecommunication is reliable.

The Court, having found that both prongs of the *Craig* test are satisfied, hereby grants the Government's Motion to allow Dr. Nine to testify at trial remotely via Zoom.

## CONCLUSION

For the foregoing reasons, the Court hereby GRANTS the Government's Motion for Relief to Allow the Testimony of Former Medical Examiner Dr. Jeffrey Nine, M.D., via Audio-Video Telecommunication. Parties shall return for a continued Pre-Trial Conference on **April 4, 2025** at **2:00 p.m.** Jury Selection and Trial shall commence on **April 10, 2025** at **1:30 p.m.**

**IT IS SO ORDERED** this __3rd__ day of April, 2025.

_____
HONORABLE VERNON P. PEREZ
Judge, Superior Court of Guam

**SERVICE VIA E-MAIL**
I acknowledge that an electronic
Copy of the original was e mailed to
*AG, Fisher*

Date *4/3/25* Time. *5:16pm*
*Albert Caldeo*
Deputy clerk, Superior Court of Guam